UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-80398-Civ-COHN
MAGISTRATE P. A. WHITE

NATHANIEL LAWLER,                          :

          Plaintiff,                       :

v.                                         :          REPORT OF
                                                    MAGISTRATE JUDGE
DR. JEAN DAUPHIN and                       :
JOHN WADE, ARNP,
                                           :
          Defendant.
_____               :

Introduction

     Nathaniel Lawler has filed a *pro se* civil rights complaint,
pursuant to Title 42 U.S.C. §1983, while confined as a state
prisoner at South Bay Correctional Facility.[1] Plaintiff seeks
declaratory and injunctive relief, as well as, money damages
arising from allegations that defendants, Dr. Jean Dauphin and John
Wade, ARNP, were deliberately indifferent to his serious medical
needs relating to his treatment for alleged Parkinson's disease.

     The case is pending against Dr. Jean Dauphin and John Wade,
ARNP, a licensed nurse practitioner, in their individual and
official capacities on the claim of deliberate indifference to
plaintiff's serious medical needs. (DE#1-complaint; DE#4-
Supplemental Memo). Presently before the Court is defendants'
motion for summary judgment and motion to dismiss for lack of
prosecution. (DE#s16,20).

_____

     [1]As of the filing of this Report, records maintained by the Florida
Department of Corrections indicate that Lawler is no longer confined, having been
released from incarceration on July 5, 2010, to serve a term of conditional
release supervision. However, on March 7, 2011, a warrant was issued for his
arrest, based on his status as an absconder/fugitive. See
http://www.dc.state.fl.us.

<u>Standard of Review</u>

A.   <u>The Law of Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

Thus, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for the motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact.  This demonstration need not be accompanied by affidavits.  <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990).  If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material

fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.), <u>cert.</u> <u>denied</u>, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11 Cir. 1990).

The non-moving party, even a *pro se* prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. <u>Fed.R.Civ.P.</u> 56(e); <u>Coleman v. Smith</u>, 828 F.2d 714 (11 Cir. 1987); <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986); <u>Baldwin County, Alabama v. Purcell Corp.</u>, 971 F.2d 1558 (11 Cir. 1992). Despite the liberality with which courts are obliged to interpret <u>pro</u> <u>se</u> complaints, "a <u>pro</u> <u>se</u> litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11 Cir. 1990).

On October 28, 2010, an Order was entered informing the *pro se* plaintiff of his right to respond to an opposing party's motion for summary judgment, and instructing him regarding the requirements under Rule 56 for a response to such a motion. <u>See</u> Order Instructing <u>Pro Se</u> Plaintiff Concerning Response To Motion For Summary Judgment.(DE#17). As of the filing of this Report, the

plaintiff has not filed a response to Defendants' motion for summary judgment.

B. <u>Law Relating to Inmate Medical Claims</u>

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (*quoting* <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362 (11 Cir. 1999). The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide prisoners with "humane conditions of confinement," which includes adequate medical care. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34 (1994).

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. <u>Farrow v. West</u>, 320 F.3d 1235, 1243 (11th Cir. 2003). Deliberate indifference contains both an objective and subjective component. <u>Id</u>. A plaintiff first must demonstrate an "objectively serious medical need." <u>Id</u>. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Id</u>. (citation and quotation marks omitted). Further, the medical need must be one that poses a substantial risk of serious harm if left unattended. <u>Id</u>.

Once a serious medical need is shown, a plaintiff must then satisfy the subjective inquiry, establishing that "the prison official acted with deliberate indifference to that need." <u>Bozeman v. Orum</u>, 422 F.3d 1265, 1272 (11th Cir. 2005) (citation and quotation marks omitted). Deliberate indifference requires that "the official knows of and disregards an excessive risk to inmate

4

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Deliberate indifference requires "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." <u>Farrow</u>, 320 F.3d at 1245 (citation and quotation marks omitted). Specifically, the Eleventh Circuit has noted, in pertinent part, as follows:

> Our cases have given substance to [the] distinction between "deliberate indifference" and mere negligence, explicating categories of action or inaction that may constitute deliberate indifference, repeatedly finding that "an official acts with deliberate indifference when he or she knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." <u>Ciccone v. Sapp</u>, Even where medical care is ultimately provided, a prison official may nonetheless act with deliberate indifference by delaying the treatment of serious medical needs, even for a period of hours, though the reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable. We have also held that deliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment. Moreover, "[w]hen the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."

<u>McElligott v. Foley</u>, 182 F.3d 1248, 1255 (11th Cir. 1999) (citations omitted) (second alteration in original).

However, a "simple difference in medical opinion" does not constitute deliberate indifference. <u>Waldrop v. Evans</u>, 871 F.2d 1030, 1033 (11th Cir. 1989). "[T]he question of whether governmental actors should have employed additional diagnostic techniques or

forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995)(citation omitted). "The inadvertent or negligent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain." <u>Farrow</u>, 320 F.3d at 1243 (citation and quotation marks omitted). In addition, "the official may escape liability for known risks 'if [he] responded reasonably to the risk, even if the harm ultimately was not averted.'" <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1290 (11th Cir. 2004)(<u>quoting</u> <u>Farmer</u>, 511 U.S. at 844 (footnote omitted) (alteration in original).

## C.  Law Pertaining to Qualified Immunity

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001)(quoting <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985)). The purpose of the qualified immunity defense is to "protect[] government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. ___, ___, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009) (*quoting* <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); <u>Youmans v. Gagnon</u>, 626 F.3d 557, 562-63 (11th Cir. 2010). Qualified immunity shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)(*quoting* <u>Willingham v. Loughnan</u>, 261 F.3d 1178, 1187 (11th Cir. 2001)).

In <u>Saucier</u>, *supra*, the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold

question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Lee</u>, <u>supra</u> at 1194 (quoting <u>Saucier</u>, 533 U.S. 194, 201); and then, if a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." <u>Lee</u>, <u>supra</u>, 284 F.3d at 1194 (quoting <u>Saucier</u>, <u>supra</u>). This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id.</u>; <u>see also</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031-33 (11th Cir. 2001)(*en banc*). Following the Supreme Court's decision in *Pearson*, the courts are free to consider the elements in either sequence and to decide the case on the basis of either element that is not demonstrated. <u>See</u> <u>Pearson v. Callahan</u>, 129 S. Ct. at 818; <u>Youmans v. Gagnon</u>, 626 F.3d at 562-63. Consequently, the *Saucier* test is no longer mandatory, but is to be used as a guideline when appropriate. <u>Id</u>.

## Discussion

Defendants have filed a motion for summary judgment, essentially arguing that the materially undisputed record indicates that, under the circumstances of this case, plaintiff has not demonstrated that he has a serious medical need, much less that he's been diagnosed with Parkinson's disease. (DE#16:14). Alternatively, defendants also argue that even if plaintiff did have a serious medical need, he has failed to show that the defendants were deliberately indifferent to that need. (DE#16:15). Thus, they conclude that there has been no constitutional violation, because neither element necessary to sustain an Eighth Amendment violation is present. (<u>Id</u>.:16). Defendants have supported their motion with with the plaintiff's prison medical records, and

an affidavit from defendant, Dr. Jean Dauphin.[2] (DE#16).

The affidavit from Dr. Dauphin, in conjunction with plaintiff's medical records indicate as follow. (DE#16)[3]. Plaintiff was transferred from Hendry Correctional Institution to South Bay Correctional Facility ("SBCF") on November 11, 2008. (Id.:66-67). The transfer form noted plaintiff had chronic abdominal pain for two years, and was being treated for hemorrhoids, constipation, and flatulence. (Id.).

On November 19, 2008, plaintiff was seen by the medical department for medical evaluation as a new "intake" prisoner. (Id.:65). Records reveal that plaintiff had a history of irritable bowel syndrome and h.pylori, a chronic, low-level inflammation of the stomach lining. (Id.:65;Affidavit:2). Plaintiff complained of h.pylori symptoms returning, which Dr. Dauphin treated with Amoxycillan. (Id.). He was also given Bentyl to treat his flatulence. (Id.). According to Dr. Dauphin, there is no "cure" for irritable bowel syndrome, however, the medications prescribed would manage plaintiff's condition. (Id.).

Plaintiff failed to show for a sick call on December 29, 2008, but was then seen by Dr. Dauphin shortly thereafter on January 5, 2009. (DE#1:65). At that time, plaintiff had multiple complaints, including, abdominal pain, sensation of something crawling in his head, and upper and lower back pain. (Id.:64). Plaintiff believed he had cancer. (Id.). Dr. Dauphin ordered a KUB scan, which is an x-ray of the bladder and chest, as well as, lab tests and a

---

[2] In his complaint, the plaintiff attaches copies of grievances filed with prison officials regarding his requests for medical treatment, as well as, the responses thereto. (DE#1).

[3] The page numbers referred to here correspond with the number on the lower, right-hand corner of the exhibits attached to Dr. Dauphin's affidavit. (DE#16).

urinalysis. (Id.). At that time, plaintiff's medications were also renewed. (Id.). The foregoing tests were performed on January 8, 2009, and were then reviewed by Dr. Marc Tennenbaum, who noted that the test results showed no abnormalities. (Id.:63).

Plaintiff was next seen at the medical department on February 17, 2009. (Id.:62). Dr. Dauphin treated plaintiff at that time, noting plaintiff indicated he was feeling much better. (Id.). Dr. Dauphin further reviewed the test results with plaintiff, which were all within normal limits. (Id.).

On April 6, 2009, plaintiff was seen by Nurse Pedraza at the medical department, during which plaintiff complained of having tremors. (Id.:60). The nurse gave plaintiff Ibuprofen, and referred him to a medical doctor at SBCF. (Id.). Plaintiff was then seen by Dr. Dauphin on April 16th, during which it was noted plaintiff had a wart on his inner right thigh and scrotum. (Id.). Trichloracetic acid was applied to treat the warts. (Id.). That same day, plaintiff was also seen by the dizziness protocol unit of the medical department, for "ongoing" dizziness, at which time it was also noted that plaintiff was not on any medication. (Id.:58). An EKG was done thereafter which was within normal limits. (Id.:57).

On April 27, 2009, Dr. Dauphin saw plaintiff, who had multiple, vague complaints, including suffering from headaches. (Id.:56). Plaintiff complained that he felt his head was going to "explode" and that his hands were trembling uncontrollably. (Id.). At the time of the visit, however, Dr. Dauphin did not find any evidence of such tremors, as it would have been noted on his chart. (Id.:56; DE#1:Affidavit:3).

On May 15, 2009, Dr. Dauphin again saw plaintiff, and questioned him regarding his purported tremors. (Id.:55). A

neurological exam was done which was "intact," and the doctor found no tremors. (Id.). Notwithstanding, plaintiff was prescribed a trial of Inderal, a beta blocker used to treat high blood pressure, migraine headaches, and certain types of tremors, as well as, anxiety related symptoms. (Id.).

In May and July, 2009, plaintiff was seen for a follow-up regarding his warts, as well as, for examination of a lump in his testicle. (Id.:52,54). Specifically, however, on July 22, 2009, during his medical visit, plaintiff was agitated, cursing at the doctor, and accusing the SBCF medical department of not doing a thing to help him. (Id.:50). Plaintiff further complained he was suffering from tremors, muscle twitches, headache, insomnia, and the sensation of something "jumping" on his muscle and skin. (Id.). Dr. Dauphin found plaintiff to be verbally abusive, incoherent, and delusional, and because of his aggressive behavior, he was escorted from the examination room after refusing to leave. (Id.). Dr. Dauphin then noted on the chart that he would discuss the case with the psychologist, and make a formal referral to mental health. (Id.).

Plaintiff was next seen in August and September 2009, complaining of abdominal pain, for which he was given an antacid and dicyclomine. (Id.:45,48). In October 2009, he was seen several times for back pain. (Id.:40-43). Dr. Marc Tannenbaum's examination revealed, however, that plaintiff was able to ambulate independently and with ease. (Id.). Dr. Tannenbaum further noted that plaintiff had been previously seen by a psychiatrist, but was not taking his prescribed medication. (Id.:43).

On November 10, 2009, plaintiff was seen by Dr. Tannenbaum, at which time he again complained about back and testicular pain, as well as, shaking and trembling. (Id.:39). Medications were

prescribed and/or renewed, one of which was to aid with the spasms, and liver function testing was ordered, with a follow up to be scheduled in six weeks. (<u>Id</u>.).

At the December 23, 2009 visit, Dr. Tannenbaum again saw plaintiff, at which time he noted that prescribed medications were helping with plaintiff's spasms, but lab tests were all normal, and the complained of trembling was "supra tentorial in nature," meaning the problem was in "plaintiff's head." (<u>Id</u>.:34).

From January to February 2010, plaintiff was seen on numerous occasions for a shoulder injury, sore throat, cold, and abdominal pain. (<u>Id</u>.:28,30-33). In February 2010, it was also noted that plaintiff requested to speak with a mental health counselor. (<u>Id</u>.). During one such visit, ARNP Wade noted that plaintiff had good control of his acid reflux, and recommended plaintiff continue taking his prescribed medications. (<u>Id</u>.:22-24).

On March 11, 2010, however, it was noted that plaintiff was non-complaint with taking his medications, and an incident report was therefore completed. (<u>Id</u>.:22). A few days later, plaintiff also refused a mental health visit. (<u>Id</u>.:20-21). Dr. Dauphin noted that while plaintiff was at SBCF, he was seen by the mental health department on 15 occasions, but refused treatment on 4 occasions. (DE#16:Ex.1-Affidavit:6). Dr. Dauphin also noted that plaintiff left SBCF on March 19, 2010. (<u>Id</u>.).

In his affidavit, Dr. Dauphin avers that he and his medical staff rendered appropriate medical care, and denied that plaintiff ever had a serious medical need. (<u>Id</u>.:6). Dr. Dauphin also states plaintiff did not have Parkinson's disease. (<u>Id</u>.). He further states that plaintiff was never refused or denied treatment, and that the care and treatment that was prescribed was based on the

11

clinical condition present at the time. (<u>Id</u>.).

Records provided by plaintiff indicate that on September 26, 2009, plaintiff submitted a formal grievance, complaining that he had been going to the medical department at SBCF for nine months for multiple complaints, including, but not limited to, headaches, pain in both sides of his torso, pain and spasms in his upper and lower back, pain in the area of his gallbladder and liver, vibrations/spasms which start when he tries to rest or relax his head, as well as, uncontrollable twitching and shaking. (DE#1:-9/6/09-Grievance). Plaintiff recounts that on August 27th, 2009, after advising Wade of his medical problems, and voicing his concern that he felt his condition was deteriorating, he requested that SBCF schedule a consultation with a specialist outside the facility who could further investigate and diagnose his complaints. (<u>Id</u>.). According to plaintiff, after Wade reviewed plaintiff's medical records, he told plaintiff there was "nothing he could do," and that plaintiff would have to wait until he got out of prison to seek further medical attention. (<u>Id</u>.). Plaintiff stated that Wade also advised him that a lot of money had been expended on tests performed on plaintiff, and that nothing was found. On October 16, 2009, the grievance was denied on the basis that plaintiff had been evaluated by two different clinicians, had been treated appropriately, and thus there was no clinical need for an outside consult at that time. <u>Id</u>. The appeal therefrom was next denied on February 17, 2010. <u>Id</u>. In so finding, it was noted that the Chief Health Officer is responsible for determining plaintiff's appropriate treatment regimen, including outside consults, for the conditions he was experiencing. <u>Id</u>

The foregoing indicates plaintiff's conditions were never ignored, and it cannot be said that neither Dr. Dauphin nor Nurse Practitioner Wade were deliberately indifferent. Indeed, the record

reflects that plaintiff had constant access to and was provided ongoing medical care including pain management and mental health treatment arising from all of his complaints, including his purported uncontrollable tremors and shakes. It is clear that the care plaintiff received was more than minimally adequate. That he would have preferred to have an outside consultation with another physician or specialist to further investigate complaints for which he was appropriately being treated cannot support a claim of deliberate indifference. See, e.g., Adams v. Poag, 61 F.3d 1537 (11th Cir. 1995) (exercise of medical judgment is an inappropriate basis for Section 1983 liability).

To the extent plaintiff suggests that Dr. Dauphin or Wade committed malpractice and were negligent in their treatment regimen, these arguments are facially insufficient to support a claim of deliberate indifference. See Farmer, 511 U.S. at 835-36 mere negligence insufficient); Estelle, 429 U.S. at 102-03(allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment); Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999), amended by 205 F.3d 1264 (11th Cir. 2000) (medical malpractice - negligence by a physician - is insufficient to form the basis for a claim for deliberate indifference).

Causation: Plaintiff also alleges that the defendants' denial and delay of treatment for his trembling and shaking caused constant severe and unnecessary pain and made his condition worsen. However, there is nothing of record to support such an allegation. To the contrary, defendants did not unnecessarily delay treatment, nor did their actions cause plaintiff injury. The plaintiff speculates, without providing any proof in support thereof, that he now suffers and/or was suffering throughout the relevant time period with Parkinson's disease which went untreated by defendants.

13

However, he provides no objective proof in this regard.

Notwithstanding, plaintiff's allegations fail to demonstrate causation between the defendants' alleged deliberate indifference and plaintiff's purported injuries. The records show plaintiff was under constant medical care of SBCF, and was was repeatedly treated, provided medication, testing, and health accommodations. Thus, it is also readily apparent that plaintiff has not demonstrated how any action or failure to act by the defendants injured him.

Based on the foregoing, plaintiff's allegations fail to demonstrate defendants had subjective knowledge of a risk of serious harm, and that they disregarded that risk by conduct that is more than gross negligence. Further, plaintiff has not established that the defendants were deliberately indifferent to any serious medical need, if there were such a serious medical need. Plaintiff has not shown that defendants knew of a serious medical need and then disregarded any serious harm to plaintiff or displayed conduct beyond gross negligence as a result of the denial of a request for an outside consult by another physician.

In sum, plaintiff has not established a serious medical need (*i.e.*, objective component for Eighth Amendment violation) and there is no indication in the record that defendants acted with deliberate indifference by not ordering an outside consultation and/or otherwise not treating or ruling out that plaintiff was suffering from Parkinson's disease (*i.e.*, subjective component for Eighth Amendment violation). Since plaintiff has not demonstrated a violation of his constitutional rights, it need not be determined whether the alleged injury suffered was merely *de minimus*.

Qualified Immunity: Even if the plaintiff has alleged a

violation of a clearly established right, which the undersigned does not find, defendants are alternatively entitled to qualified immunity. A reasonable officer would not have clearly understood that the officer was violating the Eighth Amendment rights of a prisoner under the circumstances here. See <u>Saucier</u>, 533 U.S. at 205, 121 S.Ct. 2151.

In the absence of genuine issues as to any material fact, defendants are entitled to summary disposition of the complaint against them. <u>See</u> <u>Fed.R.Civ.P.</u> 56(e); <u>Celotex Corp. v. Catrett</u>, <u>supra</u>. <u>See also</u> <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990); <u>Coleman v. Smith</u>, 828 F.2d 714 (11th Cir. 1987); <u>Brown v. Shinbaum</u>, 828 F.2d 707 (11th Cir. 1987).

## Claim for Injunctive Relief

Further, it appears that the plaintiff seeks a court order enjoining the defendants from continuing their allegedly deliberate indifference to plaintiff's medical needs. However, since the filing of this complaint, the plaintiff has been been released from SBCF and is now in an "absconder/fugitive" status which appears to have arisen as a result of plaintiff's conditional release supervision. Therefore, plaintiff's claim for such injunctive relief against the defendants is moot. <u>See</u> <u>Smith v. Allen</u>, 502 F.3d 1255, 1267 (11th Cir. 2007)(generally, transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief); <u>Zatler v. Wainwright</u>, 802 F.2d 397, 399 (11th Cir. 1986)(inmates release from prison mooted claim for declaratory and injunctive relief); <u>Tucker v. Phyfer</u>, 819 F.2d 1030, 1035 (11th Cir. 1987)(claim of prisoner seeking declaratory relief regarding conditions in which he was held as a juvenile became moot when he reached the age of majority); <u>McKinnon v. Talladega County</u>, 745 F.2d 1360, 1365 (11th Cir. 1984)(inmates

transfer to a different jail moots claim for declaratory and injunctive relief); <u>Dudley v. Stewart</u>, 724 F.2d 1493, 1494 (11th Cir. 1984)(transfer from county jail to state prison mooted claims for injunctive and declaratory relief against county jailers); <u>cf.</u>, <u>Johnson v. Turpin</u>, 2001 WL 520804 (11th Cir. 2001)(prisoner's claims for injunctive relief not moot because he was still within the state prison system); <u>see also</u>, <u>Thompson v. Carter</u>, 284 F.3d 411 (2nd Cir. 2002)(transfer to different facility mooted request for relief); <u>Oliver v. Scott</u>, 276 F.3d 736, 741 (5th Cir. 2002)(same); <u>Lamb v. Bumpus</u>, 52 Fed.Appx. 740, 741 (6th Cir. 2002)(transferred from county jail); <u>Crocker v. Durkin</u>, 53 Fed.Appx. 503 (10th Cir. 2002)(transfer to different federal penitentiary); <u>Mayfield v. Fleming</u>, 32 Fed.Appx. 116 (4th Cir. 2002).

## Motion to Dismiss for Lack of Prosecution

Upon review of the procedural history of this case, and the defendants' motion (DE#20), it appears that the plaintiff no longer wishes to litigate this case. He has failed to respond to the court's scheduling order (DE#15), and to the court's Order concerning the filing of a response to defendants' motion for summary judgment (DE#17).

The plaintiff filed this lawsuit on March 18, 2010, while confined at the South Bay Correctional Facility. The defendants mailed their answer to plaintiff's address of record. As previously noted, it appears that on October 28, 2010, the court apparently learned from the Florida Department of Corrections, Offender Network Database,[4] that plaintiff had been released, and listed his stated residence upon release. At that time, the summary judgment motion and court's order were resent to plaintiff. As of the filing

---

[4]<u>See</u> www.dc.state.fl.us.

of this Report, mail has not been returned to the Court as undeliverable and/or unable to forward. The plaintiff has failed to comply with both court orders. He has not filed a response to defendants' motion for summary judgment. He has also not complied with the court's scheduling order. Further, the defendants correctly argue that the plaintiff has not updated his address with the court, and appears to no longer be litigating this case. Under these circumstances, the defendants' motion to dismiss for lack of prosecution should also be granted.

### Conclusion

It is therefore recommended that: (1) the Defendants' motion for summary judgment (DE#16) be granted; (2) the plaintiff's request for injunctive relief be dismissed, as moot; (3) the Defendants' motion to dismiss for lack of prosecution be granted (DE#20); and (3) this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the Report.

SIGNED this 16th day of March, 2011.


_____
UNITED STATES MAGISTRATE JUDGE


cc:  Nathaniel Lawler, Pro Se
     DC#600118
     South Bay Correctional Facility
     P.O. Box 7171
     South Bay, FL 33493
     (Address on Complaint)

17

Nathaniel Lawler, <u>Pro Se</u>
726 N.E. First Avenue
Miami, FL 33132
(Address as of 10/28/10-<u>See</u> DE#18)

Brett M. Waronicki, Esquire
Attorney for Defendants
Wiederhold & Moses, P.A.
560 Village Boulevard, Suite 240
West Palm Beach, FL 33409